## MORALES v. RIVERA.

### APPEAL from the District Court of Humacao.

No. 127.—Decided May 19, 1905.

DIVORCE—CRUEL TREATMENT AND GRAVE INJURIES.—Cruel treatment and grave injuries constitute a sufficient ground upon which to base an action for divorce, in accordance with the provisions of section 164 of the Civil Code.

ID.—By grave injury, for the purposes of an action for divorce, is understood the imputation of a vice or lack of morality, the consequences of which may considerably affect the good name, credit or interests of the aggrieved party.

ID.—ALIMONY.—Where a decree of divorce is granted on the prayer of the wife, if she has no means of subsistence the court will grant her alimony from the property of the husband, and this must not exceed one-third of the income therefrom.

ID.—The act of the husband in sending his wife away from the conjugal home on the morning after the night of the wedding, delivering her to a friend to be taken to the house of her parents, under the unwarranted pretext that he had not found her to be a maiden on the consummation of the marriage, besides being the most insulting injury that can be inflicted upon an honest woman, constitutes cruel treatment such as mentioned as a ground for divorce in the Civil Code.

EVIDENCE—REFUSAL TO ADMIT SAME.—Although refusal to admit evidence may give rise to the reversal of the judgment on appeal, before this will be done it is necessary that the evidence refused shall be admissible according to law, and its exclusion must have deprived the party of a means of defense.

ID.—JUDICIAL EXAMINATION.—A judicial examination is only proper in cases where, for the purpose of clearing up and weighing the facts, it is necessary that the judge should himself examine the places and things which are the object of the judicial controversy.

ID.—DIVORCE.—The judicial examination of the woman in an action for divorce is improper, according to the laws governing the performance of such duties, and, furthermore, it is an act which is offensive to the dignity of the woman and contrary to decency.

ID.—DEPRIVATION OF A MEANS OF DEFENCE.—In order that the Supreme Court may determine whether the trial court erred in refusing to continue the proceedings prayed for by the appellant on account of the failure of various witnesses to appear at the same, it is necessary that sufficient elements appear from the record in order for the court to judge as to the importance of the testimony of the said witnesses, and determine to what extent the failure of such witnesses to testify may have tended to deprive the party of a means of defence.

COSTS.—Costs must always be imposed on the party whose demands are in all things denied.

## STATEMENT OF THE CASE.

This is a declaratory action brought in the former District Court of Humacao, by Catalina Morales García, as plaintiff, against Gregorio Rivera y Echevarría, as defendant, for divorce. The proceedings are pending before this court by virtue of an appeal taken by counsel for the defendant from the judgment rendered by said court, which reads as follows:

"*Judgment.*—In the city of Humacao, June 30, 1903.—An oral and public hearing was had of this declaratory action brought by Catalina Morales y García, a native and resident of Gurabo, married, represented by Attorney José de Guzmán Benítez, as plaintiff, against Gregorio Rivera y Echevarría, of age, married, a resident of Gurabo, represented by Rafael López Landrón and the *fiscal,* as defendant, for divorce.

"Attorney José de Guzmán Benítez, on behalf of Catalina Morales y García, a native and resident of Gurabo, married, of legal age, brought a declaratory action against Gregorio Rivera Echevarría, of the same place, praying for a decree of divorce in favor of his client from Rivera, and a declaration of the severance and dissolution of the marriage ties between them, and that Rivera be adjudged to pay to the plaintiff every month, in advance, as long as she shall remain single, the sum of $100 as alimony, such sum to be guaranteed by a mortgage on real property belonging to the defendant, who, in addition, should pay the costs. The said prayer is based upon the following facts: Gregorio Rivera Echevarría and Catalina Morales y García, of age, and residents of Gurabo, contracted marriage in said town

between 12.30 and 1 a. m., September 22, 1902. After the marriage the couple went to the house of Rivera, accompanied by friends and relatives, and upon remaining alone, they proceeded to occupy the matrimonial couch, where Catalina, as a wife faithful to her duties, complied with her conjugal obligation to her husband, feeling happy in offering to her husband the purity of her soul and the virginity of her body as the consecration of a life full of virtues, which since childhood had gained for her the admiration and affectionate respect of all the residents of Gurabo. A few moments before consummating the carnal act the husband explored the sexual organs of the wife, roughly inserting two or three fingers, which caused her acute pain and hemorrhage, without doubt owing to the hymen having been scratched. Afterwards he possessed her completely, occasioning the accidents peculiar to the loss of virginity. After the consummation of the coition and after Gregorio Rivera had rested a few minutes at the side of his wife, he told her that she was not a virtuous woman, as she was not a virgin, and that she should go to her home. Gregorio Rivera insisted in his aberration, and, without considering the scandal which he was causing, immediately sent for Eustoquio Diaz and Isidoro Hernández, his intimate friends, to go and inform Antonio Rodríguez González, the stepfather of the wife, of this unexpected event, which was to disturb forever the peace and tranquillity of that distinguished and most honorable family. At 4.30 a. m. Messrs. Díaz and Hernández appeared at the dwelling of Catalina Morales, awakened Antonio Rodríguez, and informed him of this very sad news, which appeared to him absurd and incredible. Mr. Rodríguez went immediately to the house of the newly married couple, and when he became convinced that Rivera repudiated his daughter, and when after an indescribable scene between the father and daughter in the presence of the persons there, including the husband, he ratified the profound conviction of the innocence of that pure and virtuous woman, he returned to his home to give his wife, Luisa García, the mother of Catalina, the terrible news of so sorrowful an occurrence. At 5 o'clock in the morning, at an hour when most of the residents of Gurabo had risen and were going about the streets or were on the balconies of the houses, attracted by the movements of the persons who had taken part in this scene, Catalina Morales y García, repudiated by her husband and accompanied by Eustoquio Díaz and Isidoro Hernández, came out to be taken to the paternal home and delivered, as she was, to her parents. Catalina, after recovering from the impression which this misfortune had made upon her, desirous of recov-

ering her honor and that of her family, which had been so unjustly attacked, decided to submit immediately to the examination of physicians, in order that they might give a scientific opinion with respect to her state of virginity on the night of her marriage. She was examined by Doctors Manuel Jiménez Cruz and José Barreras, who, notwithstanding their intimate friendship with Gregorio Rivera, were obliged to render an opinion favorable to the virginity of my client, although their resport was deficient from a scientific point of view. But, not satisfied with this, and desiring to have the most careful and scientific investigation procurable, Catalina went to San Juan, accompanied by her mother and a brother in this city, asked for an examination by the well-known physicians, Doctors José Ordónez, Esteban Saldaña, and Manuel Figueroa, who, after a careful examination made on September 27th—that is to say, five days after the marriage—upon scientific reasonings, based on the condition of the sexual organs, arrived at the conclusion that, without any doubt whatsoever, Catalina Morales y García had been a virgin until Sunday, September 21, 1902, inasmuch as she did not show any cicatrixes nor other signs permitting a supposition that the defloration could have taken place prior to the date mentioned.

"This appears from the certificate issued by said physicians on September 27, 1902, which was ratified in all its parts under oath before the municipal judge of the Cathedral district on the 9th instant, according to the statement appearing at the foot of said certificate. Although Catalina Morales is being cared for in the house of her stepfather, Antonio Rodríguez, and his wife, Luisa García, who have always carefully provided for her personal necessities, she has no property of her own, for which reason I affirm that my client has no private means upon which to live.

"Gregorio Rivera Echevarría is engaged in trade in the town of Gurabo; in addition, he is the owner of four houses, merchandise, cattle, various credits and cash declared in his statement for the current year, No. 278, to the value of $10,252, although, in view of the income which he derives from his property, they should be given a value of $20,000, inasmuch as said income is not less than $3,600 per annum. He states that his client has endeavored to effect a conciliation.

"By supplementary prayers to the petition a cautionary notice is requested as to the mortgage, the constitution of which is asked for to guarantee the payment of $100 per month in advance to Catalina Morales, and that the proper order issue so that said cautionary no-

tice may be entered against the houses described in the certificate referred to, and that said order be directed to the Registrar of Property of Caguas, and that the defendant be called upon to place in the hands of his client, without any excuse or pretext whatsoever, the sum of $100 every month, as provisional support, to be paid in advance from the date of this petition, in accordance with the provisions of section 217 of the Civil Code.

"Attached to the petition were the certificate of birth of the plaintiff; a certificate issued by the municipal judge of Caguas, showing the marriage of the plaintiff to Gregorio Rivera; a certificate issued by Doctors Ordónez, Saldaña and Figueroa, referred to in the complaint; a certificate issued by the Treasurer of Porto Rico relating to the property declared by Rivera; and a certified copy of the proceedings to effect a concilation brought by Catalina in the Municipal Court of Caguas.

"The complaint was admitted by an order of October 25, 1902, notice thereof being served on the *fiscal* and Gregorio Rivera Echevarría, in order that they might appear and make answer within the period of twenty days not subject to extension. The order also directed that a cautionary notice of such complaint should be entered and that the proper order be directed to the Registrar of Property of Caguas to enter the proper note on the margin opposite the records of the houses, and other petitions contained in the second supplementary prayer being also allowed.

"The *fiscal* having been summoned and letters mandatory having been issued to the municipal judge of Caguas, Gregorio Rivera Echevarría was called upon to pay in advance to Catalina Morales, to date from October 17th, the sum of $100 per month, whereupon he made answer that it was impossible for him to comply with this order, as he had absolutely no property, having conveyed that which he had owned to his creditors.

"On November 12th last, Attorney Rafael López Landrón filed a petition on behalf of Gregorio Rivera Echevarría, praying for the admission of a cross-complaint in the proceedings for divorce, and requesting that it be finally held: That Catalina Morales y García is a spouse guilty of grave acts of contumely against her husband in leading him to believe that she was virtuous and a virgin in order to contract marriage with him as a single woman; that the right to bring the suit for divorce is not vested in her, but in the offended husband; that she has none of the rights that the code vests in the innocent spouse, but all the obligations which the laws impose upon the guilty

spouse; that the marriage tie between Gregorio Rivera Echevarría and Catalina Morales y García is dissolved for all legal purposes respecting Mrs. Morales. He based his petition on the following facts: Catalina Morales y García was a girl of humble birth in the town of Gurabo. Her family being a virtuous one and one held in high esteem, perhaps her very poverty raised her in the eyes of the man who sought her, in addition to the attractiveness of her age, her features and the modesty of her demeanor. Catalina had not attained 22 years of age; she had not left the state of the daughter of a family properly guarded and for the time under jealous paternal care, when Gregorio Rivera Echevarría, a man of irreproachable conduct, of mature reflection, owing to his age, widower of Matea Morales, far removed from the dissipation and pastime of youth, became interested in her and paid her amorous courtship, with a view to marriage. There were no serious reasons which arose to oppose this love making. If Catalina had had any other amorous relations my client could not have stated of his own knowledge. With the bandage of love across his eyes, all that he could say at the time, as I now say, is that in his opinion, if she had ever had any other relations, it was without his knowledge. But however this may be, Gregorio Rivera Echevarría in his growing enthusiasm put aside all the little difficulties which might arise in the way of the celebration of the marriage. When his fiancée was poor, he would make her his companion and equal in position. When her extreme poverty did not permit her to defray the small expense of her personal documents, her fiancé relieved her of these troubles, gladly and voluntarily paying all expenses. When she lacked the most simple and necessary trousseau for the marriage, he gave her clothing and finery, and daily during the two months and a half the engagement lasted he made her presents and gifts and showed attentions which were not returned. He hastened the celebration of the marriage, quieting without mistrust or suspicion a certain passive resistance on the part of the family and of the fiancée, who requested respites, postponements and delays, instead of what usually takes place in cases of this character, under the pretext that young Catalina was not mature enough and too young to marry. Finally, the morning of September 22 of the current year, Gregorio Rivera y Echevarría and Catalina Morales García contracted canonical marriage in Gurabo. Eustoquio Díaz and Dolores Ramírez, his wife, landowners and residents of the town, acted as sponsors at the marriage, entertaining the fiancée. It was about a quarter to 4 of the morning of September 22d that the newly married couple went to the

conjugal dwelling. Here lived the children by the first marriage of Gregorio—José, 15 years of age; Juana, 13; Gregorio and Margarita. Catalina Morales García was to be an example for them and their adviser. There she had prepared for her personal service Paula Quiñones and a boy, Cecilio Unier, who composed the domestic service. But note now that when she went to the conjugal couch she made some tremendous revelations to the husband: Love, blind as it is painted, obscured, fuscated in his passionate raptures, he sees through his bandage the deception of which he has been made the subject. The modest, shy, timid, and ideal Catalina soon appeared real and actual as she had been in her secret intimacies. Without any of the external signs of a Venus of Milo nor of any other mythical or materialized virgin, she could offer nothing but a very faded virginity, wasted through frequent and inveterate carnal connection. It was not possible to conceal such evidences in the open. Manners may be falsified if it is desired; the distinction of innocence may be imitated in the comedy of life; all virtues may to a certain extent shine by external precautions; but to simulate at one time in intimacy, to touch and contact, all the first offerings of the body and soul of a chaste virgin, cannot be stood by a mature and reflective man of sound judgment. Thus it was that Rivera understood from that shameful instant that the person he had received in his couch was not a maiden. Who knows whether she was not the mistress of some stealthy thief of the honor of families; that Catalina was not a newly wedded virgin, but the cast-off mistress of another; that all she had was faded youth, cunning and deceit, which had been discovered, ignominy and conflict? At such a critical time another husband, impelled by anger, would have delivered himself to the ire of vengeance and permitted himself to be led away by brutal passion. But this did not occur; Gregorio Rivera Echevarría immediately recovered his self-control, refreshed his mind in the serenity of reflective ideas, and considered his action; but at the same instant, deciding in favor of a resolution most·compatible with the debility of woman and the strength of man, endeavored to calm himself, follow proper form without injury and the energy of vindication. He returned the wife to the house of her parents; he turned her over to the sponsor, who delivered her to her parents. But a few moments before being sent from the conjugal home, while at the door held in the hands of the offended husband, she let the following words of repentance and confession escape her lips: 'Come here; I am going to tell you the truth, and you are going to

forgive me.   I was dishonored when I was 11 or 12 years of age, while at school, by a son of the professor.'

"Upon Catalina Morales y García being returned to her home, Antonio Rodríguez, her stepfather, called in two physicians, intimate friends of his, and in whom he had confidence, José Barreras, his close friend, and Manuel Jiménez Cruz, who is unfriendly to my client, to examine and convince themselves of the virginity of the wife by all external signs.   On account of this call both physicians went to see Gregorio Rivera Echevarría the very day of his marriage.   They had examined Catalina and stated that they could not estimate the time she had ceased to be a virgin.   Doctor González, a brother of Antonio Rodríguez, speaking with the sincerity and frankness of a gentleman, stated that he had heard Dr. Jiménez Cruz say after the examination that he could not swear that the young lady was a maiden the day of the marriage.   Catalina was taken to San Juan and examined by other physicians privately; they gave an opinion tending to show the day, and even the hour, Catalina Morales y García had been deflowered.   But these physicians do not state the color of the vulva, the susceptible dilation of the vagina; whether there is any contusion on the large and small lips, whether they, or what was the hymen, show any semi-lunar rubicundity, rose color, slight paleness, or already livid, of folding organs and contraction thereof, showing frequent use and abuse of carnal pleasures.   These physicians of the capital state that they found erosions of recent date in the navicular fossa, tonicity in the recently dilated vagina, breakage of the entire hymen, with edges which have not healed as yet and which give some blood when they are separated, the large lips slightly expanded, and other signs of as ambiguous a character as these, which show the recent defloration as well as remote.   And upon these ambiguous traces they assume, affirm and declare that Catalina Morales y García was a maiden until Sunday, September 21st, exactly, without it having been possible that the defloration could have occurred before that date.   These opinions were given six days after the celebration of the marriage and after the wife had been living in the house of her parents.   I am not going to attempt to invade the foreign field of science to refute such deficient opinions, and shall leave this brilliant feat to other physicians less friendly to the house of Catalina.   Let them state whether, after examining all the signs of virginity, recently or remotely lost, whether it is possible to simulate the tenderness and softness, the blush and coloring of a maiden, in the appearance, in the bosom and in the genital regions.   And an ocular inspection by the

judges, assisted by the indications of the husband, his counsel and his physicians, will show with all the evidence of the eyes and touch that where all the absolute signs of a maiden are lacking, all those of a long-married woman are more than present.

"By order of November 20th, the cross-complaint was referred to the other side for a period of three days, a copy of such complaint being delivered to said party. Answer was made on November 29th by Attorney José de Guzmán Benítez, counsel for Catalina Morales García, in which he denied all the allegations of the cross-complaint and prayed for its dismissal, with a decision in accordance with the complaint and with the costs against the defendant.

"By order of December 2 last, the parties were summoned to appear and present evidence, and at the hearing which took place on the 22d of said month, at 3 p. m., Attorney José R. Aponte appeared in the place of José de Guzmán Benítez, counsel for Catalina Morales, and Tomás Bernardini de la Huerta in place of Rafael López Landrón, counsel for Gregorio Rivera Echevarría. The former proposed private documentary evidence, expert evidence, confession and the evidence of witnesses, and the judicial examination of Catalina Morales, supplemented by the report of the experts, made in the presence of the court, which evidence was held to be pertinent, a day being set for the parties to come to an agreement upon the appointment of experts and the holding of the oral trial.

"On the day set for the oral trial Attorney Jacinto Texidor appeared on behalf of the plaintiff and Attorney López Landrón on behalf of the defendant. After the statement of Gregorio Rivera had been heard the taking of testimony of the witnesses was proceeded with, and the witnesses Carmen Quijano, Juan R. Quiñones, Pedro González García, Bernardina Echevarría, Manuel Jiménez Cruz, José Eustoquio Díaz, Paula Quiñones, Cecilio Unier, José Barreras, Deogracias Marcano, Serafín Flores, Bartolo Alejandro and Dr. Manuel Figueroa were heard, a recess being then taken until 2 p. m.

"Upon the resumption of the hearing, the counsel of the parties being present and the statement of Catalina Morales having been heard, Attorney López Landrón requested that an ocular inspection be made, which was opposed by Attorney Texidor because the party interested objected. The court held that without the consent of Catalina Morales such inspection could not be made, and as she and her counsel did not permit it, she was ordered to withdraw. After counsel had made their respective arguments the judgment was voted upon and the proceedings closed.

"All provisions of law have been observed in these proceedings.

"Judge Charles E. Foote prepared the opinion of the court.

"According to section 164 of the Revised Civil Code, cruel treatment or grave injuries (grave acts of contumely) constitute, among others, a cause for divorce.

"The imputation of a vice or lack of morality, the consequences of which can gravely prejudice the reputation, credit or interest of the party offended, constitute a grave act of contumely.

"The evidence presented shows in a clear and evident manner that Gregorio Rivera y Echevarría committed a grave act of contumely against his wife the very night of his marriage, treating her, in addition, with cruelty.

"The marriage tie is dissolved, among other means, by a divorce legally obtained, and a divorce carries with it the complete rupture of such ties, according to sections 163 and 173 of the Revised Civil Code.

"If a woman who has obtained a divorce does not possess sufficient means upon which to live, the district court may allow her alimony in its discretion from the property belonging to her husband, provided such allowance for support does not exceed one-third of the income from such property.

"The costs shall always be taxed against the party whose claims are totally rejected.

"In view of the provisions of the sections cited and sections 358 to 371, *et seq.,* of the law of civil procedure, we adjudge that we should sustain and do sustain the complaint filed in the action for divorce brought by Catalina Morales García against Gregorio Rivera Echevarría, and by virtue thereof the marriage tie which bound them is hereby severed and dissolved, the defendant being adjudged to pay every month in advance to Mrs. Morales García the sum of $100 as a definite allowance for support, provided that if said sum exceeds one-quarter of the income of the husband, Rivera, then such allowance shall be reduced to said quarter, with the costs against the said defendant. So pronounced, ordered and signed by this, our judgment.—Salvador Fulladosa, Ramón Quiñones, Charles E. Foote."

An appeal was taken from this judgment by counsel for the defendant, Gregorio Rivera y Echevarría, which was allowed both for a review and a stay of proceedings and upon the record being transmitted to this higher court, the parties

were duly cited and summoned. Upon the parties entering an appearance through their counsel, Rafael López Landrón, for the appellant, and José E. Martínez Quintero, for respondent, the appeal being duly perfected, a day was set for the hearing which was attended by counsel for the parties, who made their respective arguments, and by the *fiscal,* who opposed the appeal.

*Mr. López Landrón,* for appellant.

*Mr. Martínez Quintero,* for respondent.

MR. CHIEF JUSTICE QUIÑONES, after stating the foregoing facts, delivered the opinion of the court.

The findings of fact and conclusions of law contained in the judgment apealed from, are accepted.

The act of Gregorio Rivera in sending his wife Catalina Morales away from the conjugal house the morning following the night of his marriage, delivering her to one of his friends to be taken to her home and delivered to her parents under the pretext that he had not found her to be a maiden at the time of consummating the marriage that night, constitutes not only the most outrageous act of contumely which can be in-inflicted upon a virtuous woman under such circumstances, but also cruel treatment, which is another ground for divorce under section 164 of the Civil Code in force, for which still less justification can be found when, according to the certificate issued by the physicians of this capital, Doctors Manuel Figueroa, José Esteban Saldaña and José Ordóñez, which Catalina attached to her complaint, who had examined her at her own request to determine whether she could have been a virgin five days prior to the date of such examination, said physicians state that said lady had been a virgin until Sunday, September 21, 1902, which date conforms to that indicated, and on which day her marriage to Gregorio Rivera took place. This opinion was ratified by the physicians under oath before the municipal judge of the Cathedral district of this city, and subsequently in these proceedings, Doctor Manuel Figueroa

giving his testimony at the oral trial, and the other two, owing to their inability to attend said hearing on account of absenting themselves from the island, doing so before the municipal judge of the Cathedral district afore-mentioned, under a commission from the court which had cognizance of the matter, after advice and citation of the other side.

With regard to the protest of nullity pleaded by counsel for Gregorio Rivera at the oral trial, and afterwards repeated in this Supreme Court and at the hearing, on account of Catalina Morales having refused to be examined again in the manner proposed by counsel for her husband and the court not having compelled her to submit to such examination, although a refusal to admit evidence may give rise to the annulment of a judgment, this applies to a case where the evidence denied was admissible under the laws and its absence might have deprived the party of a means of defense, which is not the case in these proceedings, inasmuch as the judicial examination of the person of Catalina Morales proposed by counsel for the defendant, Gregorio Rivera, could not be required in accordance with the law, which authorizes a judiciall examination only in cases in which it may be necessary for an elucidation and consideration of the facts for the judge to examine in person the places or the things the subject of the judicial proceedings, as prescribed by article 632 of the former law of civil procedure. These circumstances are not present in this case inasmuch as a personal inspection by the judge was not the evidence indicated for the elucidation of the facts, and it was still less necessary after Catalina had been examined by three competent physicians. Consequently, the evidence in question was not pertinent under the laws regulating proof of this character, and, therefore Catalina was perfectly within her rights in refusing to be examined in the manner proposed by counsel for the defendant, which, on the other hand, was an act offensive to her dignity and contrary to decency. For this reason it should never have been admitted, and if it had

been admitted it could not have been considered as assented to, as the law of procedure did not grant any remedy against it.

With regard to the denial of the suspension of the oral trial requested by counsel for the appellant for the presentation of the witnesses who did not attend the trial, which is also alleged as a ground for the protest, as the court lacked the elements necessary by which to judge of the importance of the testimony of the witnessess who failed to appear at the trial, there is no way of determining to what point the absence of the testimony of such witnesses may have deprived the party who proposed them of a means of defense.

The same grounds which exist for sustaining the complaint in the action for divorce brought by Catalina Morales may be advanced to dismiss the cross-complaint filed by Gregorio Rivera.

In view of the legal provisions cited in the judgment appealed from and this opinion, we adjudge that we should affirm, and we do affirm, the judgment appealed from of June 30, 1903, with the costs against the appellant; and we further dismiss the cross-complaint filed by Gregorio Rivera.

*Affirmed.*

Justices Hernández, Figueras, MacLeary and Wolf concurred.